Good morning. May it please the Court, my name is Carla Craft and I am appearing on behalf of Defendant, Cross-Complainant and Appellant Advanced Supplementary Technologies or AST. If I may, please reserve four minutes for rebuttal. Thank you. Five key bases support AST's appeal. I would like to briefly address each of them. The first three of these issues present equitable considerations. Those are whether the District Court erred in rejecting AST's affirmative defense of latches, whether the District Court erred in rejecting AST's affirmative defense of unclean hands, and whether the District Court improperly calculated the disgorgement award in this case. At least as to the first two, the relief you'd be requesting would be vacating the judgment in total. That's correct, Your Honor. And the disgorgement might? The disgorgement might alter the number.  Yes. It was three, what was the actual amount? 3.4 million? It was about 3.4 million, Your Honor. However, at least 1.4 million of that is, in our view, improperly awarded to WNI. Under your third argument here. Correct. That's correct. But under your first argument, it would be a clean sweep. That's correct, under the first and the second argument. The other two issues are legal and factual issues. The first of those is whether WNI improperly advertised what it called its liquid products, a liquid gel cap product, two of those, as being 100 percent effective, having 100 percent efficacy. I was confused. That would or would not vacate the entire award? Because it seemed like that was only part of the award. That alone would not vacate the entire award. That would add to AST's recovery against WNI in the case. AST had three claims that it asserted against WNI. It prevailed on two. The district court found it did not prevail on the 100 percent efficacy claim as being literally false. Let me see if I can further clarify this. Let's assume for the sake of this question that we agree with your latches or your unclean hands. Do we still reach issues four and five, or is that the end of it? You would reach issue four only, Your Honor, which is the 100 percent efficacy, because that is an affirmative claim that AST brought against WNI that we believe we should have prevailed on. So if the court were to agree with AST's position on either latches or unclean hands or both, then the judgment against WNI would be vacated and a judgment would be entered in favor of AST. But the amount of that judgment would be. The potential entitlement to more. That's right. That's right. So can I ask about latches? You absolutely can. So I'm looking at ER-7, and this is the district court's order after trial. And he says in there, there were two defenses that were fully raised and considered at trial, unclean hands and latches. These arguments were considered at trial and were ultimately not convincing. Was there an order on that at trial? I mean, he says they were fully considered and were ultimately not convincing. Is that, I mean, was there ever an order denying them at trial? No, Your Honor. This was a bench trial. And after the bench trial, the court issued its order making its findings, in fact. It didn't mention it at all. It didn't address those. There's no prior. This is all we have on his latches analysis is what's in ER, basically, seven and eight. We also have his order on the post-trial motions. And that. I thought that's what this was. There's an order at the end of trial. And that is, I believe, ER-7. ER-7 is the post-trial. ER-7 is the post-trial order. Yeah. ER-7 is the post-trial order. Okay. But that's all there is. No, you said there's also an order. There's an order at the end of trial, yes. And does it mention latches? Not particularly, no. So the only analysis is in the post-trial order. That's correct. Page or so, page and a quarter, whatever. That's correct. There is a mention of it, but there are no findings. There's no discussion in the order after trial. Okay. So he says it was ultimately not convincing. He understood that to be that case, but there's not a written record of why he thought that was unconvincing. That's correct. And that was one of the main bases for the post-trial motion.  And you buy on it, and then he tells you, and now you're saying, well, that's not good enough. That's correct. And so why do you think this isn't good enough? I mean, this is an equitable defense for you, so we're reviewing it for abuse of discretion, right? For the most part, Your Honor. There's one small exception in relation to latches.  Go ahead. All right. So if I can first address why. There are three reasons why we should be entitled to the latches defense here and that the court did not address or that the court got wrong in the post-trial order. First and foremost, there's a presumption in favor of latches when a case is brought outside the statute of limitations. Here, the statute of limitations is three years for a false advertising claim. This claim, this case was brought nine years after WNI indisputably knew about the alleged false advertisement. Or at least should have known. Knew or should have known, but it's quite clear that they knew. So the district court is, I mean, being generous to the district court, he seems to acknowledge that because you raised that claim to the district court and said, hey, look. Well, he didn't address that specifically, but he did acknowledge the three-year statute and he said, I'm not awarding damages beyond the three-year statute. So why doesn't that alleviate that concern? There's a difference between damages or disgorgement, the monetary recovery, and the latches defense. So a statute of limitations is going to be the statutory basis to say an action cannot be brought after a certain period of time. Latches looks at a delay beyond the statute of limitations. So the affirmative defense of latches looks at when the defendant or the counter defendant here, WNI, knew or should have known about the advertising that it alleges to be false. And latches says essentially that that defendant or that party sat on its rights and delayed in a way that was unreasonable. That's the first prong of latches. And then the second prong is that there's prejudice. But the prejudice isn't the number of years because if the latches defense succeeds, there are no damages. Right. So it's three years of damages is the prejudice if, I mean, it seems circular in a way, but. Actually, if I may, Your Honor, address this. So there's two elements to latches. The first is the delay inserting the claim is unreasonable. That goes to the timing. So here, there was a three-year statute of limitations. WNI learned of the advertising at issue in 2010. That means the statute of limitations would have run in 2013. WNI did not bring this lawsuit until 2019. That goes to the unreasonable delay piece. And that's what that piece is. But you can't recover just based on. I mean, these are two prongs that you would have to satisfy both. And as I read the district court's order, he doesn't address the first prong. He does not address the first prong. He does say I'm ruling on prejudice. So I think you still have to say, I mean, I don't know. I mean, is there a case law that says you have to address both prongs, that that's abuse of discretion not to address both prongs? It is an abuse of discretion not to address both prongs because both are critical. But importantly, Your Honor, when you talk about his, he doesn't address delay. Right. He does address prejudice, but he addresses it in an inappropriate way, in our view. No, it's legally erroneous, is what you're saying, because if there is an unreasonable delay, then prejudice is presumed and the court did not apply the presumption and just sort of looked at it afresh without any presumption. That's one of the three errors on this affirmative defense of the district court. The first is that there is a presumption of latches when a case is brought outside the statute of limitations. The district court did not address the existence of that presumption or how WNI overcame that presumption. Issue two is the unreasonable delay piece, which the court did not make any factual finding on. The record is quite clear that there was unreasonable delay, but the court did not make a finding on that issue. The third issue is prejudice, and that goes to prejudice suffered by AST due to the delay. It doesn't address the recovery amount or the time over which damages or disgorgement can occur. It addresses prejudice that AST suffered as a result of the delay, and this is really where. What was the prejudice that you claimed below? As I understood your argument, it was, hey, we, I mean, if we'd known about this, you know, we spent $1.5 million investing in this. If we'd known that this was a problem, we wouldn't have spent that money. That is one of the two prejudices, and that's the main prejudice, Your Honor, is the spending of advertising costs on this specific issue, which is exactly what the court found that we did, not in relation to latches, in relation to a different part of the case. But I thought, I mean, I was, on that issue, internet specialties, isn't that the case? And he quotes this. He says, if prejudice could consist merely of expenditures in promoting the infringed name, then relief would have to be denied in practically every case of delay. So there does seem to be some precedent that supports this idea that you can't just look to expenses in promoting the infringing name. Internet specialties is the opposite, Your Honor. It's factually distinct, and here's why internet specialties does not apply here. Internet specialties is a trademark case, not a false advertising case. In that case, what the court found were the advertising costs at issue were paid for clicking advertising, advertising that did not use or build up the trademark, the market issue. And so in internet specialties, what the court found was that the evidence did not indicate that the advertising at issue built a business around the mark. The court was looking at the relevance of the advertising to the trademark at  That is an opposite to the facts here. The facts here... The relief when, I have to go back and look at the case, internet specialties was, he says, or the quote says, then relief would have to be denied. Was the relief latches? That's not, you're not distinguishing it based on latches. No. You're not distinguishing it based on the legal claims that needed to be... Yes. And the court's, in internet specialties, the court's language about advertising was specifically limited to the fact that that advertising was not relevant to the claim in the case, that the money spent on that advertising did not enhance the brand recognition related to the mark at issue in the case. If you look instead, Your Honors, at Jarrow versus... I mean, any time you're using advertising, doesn't that enhance the brand, whether it's a trademark case or whether it's this type of a case? In that case, the court found that pay-per-click advertising did not reflect the trademark at issue. Therefore, it did not build up the trademark, and the use of the mark was what was at issue in that case. A much more analogous case, a virtually identical case, is Jarrow versus Nutrition Now, 304, Fed Third, 829. Well, he does... He cites that in a parenthetical. So go ahead with Jarrow. So Jarrow is a virtually identical case. It's in the nutritional supplement industry. It involved latches. In Jarrow, they applied the presumption of the fact that there was unreasonable delay because it was brought outside of the three-year period and relied on setting up its brand in order to find that, in fact, there was prejudice, and therefore, latches applied. And that's a Ninth Circuit case from 2002. So here with latches, what we find is that AST did suffer prejudice due to the delay, the first reason being exactly what we have just discussed, the second being that by delaying suit, WNI delayed disgorgement until AST was a very advanced brand. And I know you're running out of time, but back to Judge Graber's question, if we... I mean, it almost seems you always have to address undue delay. I mean, I don't... It might be... I guess I'm starting to query whether it's always legal error not to address undue delay because if you do address it and there is undue delay, then you have a presumption, and if you don't deal with the presumption, then you presumably have gotten it wrong on the second prong. I believe that's correct. Because I came in thinking you could do it on either.  But I think you actually have to do both. I mean, I'll hear from your opposing counsel, but... That's correct, Your Honor. And I am obviously running low on time. I've not addressed any other questions the court may have on the other bases. I want to make sure I do that if you have questions on those bases. Thank you, Judge. Oh, two minutes for rebuttal. Good morning. Your Honor, may it please the court, Jimmy Purcell on behalf of the Plaintiff-Appley Oral Nutrition. I think we'll start where we just ended with Ms. Kraft. Can I ask you, I just want to... Is the record on latches that we're dealing with ER-7 and ER-8? That's pretty much it. As far as the court's reasoning. Now, the excerpts of the record are 1,700 pages, and I'm going to address that in just a minute. His latches, did he address it in any other way? Even orally from the bench? Only during questioning where he asked Ms. Kraft what the prejudice was. I recall him saying that, I've been listening for the prejudice, and I haven't heard it. Can you articulate it for me? And so he listened to the argument, and in weighing the evidence, ultimately rejected that prejudice as reflected in the Rule 59 ruling. But as far as what's officially in an order, those two orders are the universe. But even what you said was helpful, because that might indicate why he jumped straight into prejudice. So let me just ask you where I ended up. Is it error in a latches analysis not to address both prongs? No. Anytime you have to prove two things, and that's what this is, all of the I am not aware of any case law that makes that statement, Your Honor. I am looking at both Internet Specialties and JARO, which are the cases that we focus on here, and as I read the analysis in Internet Specialties If you're wrong about that, why wouldn't that be error, not to address the unreasonable delay? Because even if there is an unreasonable delay, and I'll point you directly to the language in Internet Specialties, there still has to be  But if there's unreasonable delay, well, I guess we've got to get back to a case off the top of my head about that there's a presumption. But if there is a presumption, is it error not to consider the presumption? Or are you taking the position, I suppose you could, that regardless of whether there was a presumption, you can read what he wrote in ER 7 and 8 as rebutting that presumption? Correct, Your Honor. But let me point to some language in Internet Specialties, and I think I can clear this up. When there's a case that's filed outside the statute of limitations period, there is a presumption that the defense of latches applies to the claim. It's not a presumption of prejudice. It's simply a presumption that the defense can apply, and the parties are going to have to argue over that. In Internet Specialties, the court found that because the claim had been filed outside the statute of limitations, the presumption of latches does apply. So Internet Specialties applied the presumption of latches. And then four paragraphs later says the defendant, the one arguing latches, must still satisfy the second prong of the latches test. Prejudice resulting from Internet Specialties unreasonable delay in bringing suit. Counsel, I'm still stuck on this presumption question because Jarrow at page 8, I'm losing my page numbers here, 839 to 40, describes this as a presumption of prejudice that arises when there is an unreasonable delay. I'm sorry, Your Honor, what page are we on? It's lapse over 839 to 40. The court says in light of the presumption of prejudice and our deferential standard of review, but there is the description of what happens when there's an unreasonable delay because this section is about unreasonable delay and it refers to it as a presumption of prejudice. Your Honor, I can only point back to Internet Specialties, which was decided seven years later, in which the Ninth Circuit clearly and unequivocally said that even if the presumption applies, even if there's an unreasonable delay, the second prong must be satisfied. It seems like the debate is whether the presumption is that latches applies or whether, and maybe there's two presumptions. I mean, maybe that's one way to reconcile them, I guess, is to say that Internet Specialties applies a presumption that latches applies, but Jarrow applies a presumption that prejudice applies. Yes, Your Honor, and that dovetails into other issues, such as there's an argument in some of the briefing that the presumption essentially is reviewed de novo, basically the idea that latches applies or does not applies to a certain type of claim is reviewed de novo. And that, again, is can we even argue about latches? And I would argue, Your Honor, that this presumption, based upon being outside the statute of limitations, that latches would apply simply means that we now have to evaluate latches in this context. There is no Ninth Circuit case that I'm aware of, even in Jarrow, that shifts the burden in some way. If I could just jump in here. So I'm just, we have a situation where, as I read the record, your client was aware of this problem, 2010, certainly 2011, didn't file suit until 2019. AST is going to argue, look, we made all these business decisions, we did all these things because we thought we could. Now you're coming back to us eight years later and saying we can't. It seems to me prejudice is pretty clear that eight years of a business plan. It is not, Your Honor. Why wouldn't it? The reason for that is AST put on no evidence at trial of anything that goes to the prejudice issue other than the one thing that Internet Specialty says is not enough, which is the payment of advertising expense. Okay, but they distinguish Internet Specialties. I'd like to hear your response to that because they say that's a trademark case unlike this. Because Internet Specialties relies on Jarrow. You're still talking about latches. You're still talking about a Lanham Act case. You're still talking about building of a brand. Except that if a specific thing like a trademark is at issue and the advertising doesn't contain the trademark, why isn't that completely different than the situation here where the advertising is about the very thing that you claim can't be advertised because it's false? You can't reach that conclusion on this record, Your Honor. That's my point, is there are 11 lines in 1,700 pages of a four-day trial that talk about how much did you spend from the beginning, not on this issue, but on the products as a whole. That's what it says. That's the question. One to 1.5 million over this entire period of time. What were the points made in the advertising? Well, the district court, excuse me, the district court found as follows. Evidence indicates AST centered its advertising and spent substantial funds on the claim that its products were more effective because of their enteric coding. That's a finding of fact by the district court. So you'd have to convince us that that finding is clearly erroneous to make the argument that you just made. That finding is immaterial to latches because of the context in which it is made. Well, context or none, they either spent money on advertising the enteric coding or they didn't. That's either a fact or it isn't a fact regardless of the context in which the finding was made. Your Honor, what should have been put on at trial is evidence of what rebranding did they need to do. Counsel, is that a sentence that I read clearly erroneous, and if so, why? It is not clearly erroneous because they did advertise enteric coding. The question is whether or not being prevented from saying the phrase enteric coding means they have to rebrand everything. They're still selling Serocor NK. The only revision. You want more specificity about what that $1.5 million was and how much of that was focused. And that's what Judge Snow requested and required. Well, we didn't see that in the ruling. The reality is that the only revisions they made to their rebranding as I sit here is they did a find and replace and instead of using the word enteric coding, they're using acid resistance. That's it. They haven't rebranded anything. This order doesn't require them to rebrand. And that's the flaw in their analysis when they are arguing prejudice is they never made any attempt to show what they would need to do in order to correct this issue and comply with this order. Now, Ms. Craft may say, well, no, we did a bunch of other stuff. But it's not in this record. This record just says we spent money and enteric coding was one aspect. It's not, and that's why it's different from Jero. This case, the Serocor, is about health benefits. It may be more effective if it is acid resistant. And they're using acid resistance now instead of enteric coding. But that's not the core of what this product does. That brand, the Serocor, the Exelzyme, any of these products, they're still marketing, they're still marketing for the same thing, they're still marketing under the same brand. They just are using a different phrase for the same concept. And that's the flaw. I'm looking at this e-mail from your sales and marketing manager in 2011, where there's the advertising has this chart where it, you know, makes a centerpiece that they have this enteric coding. And, you know, it seems to have been a centerpiece of at least what I'm seeing here of the advertising. And so how are they prejudiced if they, instead of using the phrase enteric coding, they use acid resistance? It's the same concept, but they're communicating in a different way. But my point is, is that this record is devoid of any evidence of what they would need to do to comply with it. They cannot show prejudice because all they have shown is the amount of money spent on advertising in general for these products. And when asked, Mr. Giroldi said, sure, enteric coding, the effectiveness of the product, what it's used for, the quality, these are things that are mentioned. Well, you're again walking away from a district court's finding of fact. Let me address that directly then, Your Honor. What that deals with is the literal falsity, which it doesn't seem like we're going to have time to get to, but the literal falsity of their advertising statements. And what has to be proven if there's not literal falsity is that the statements were misleading and material to a consumer. And the parties stipulated in the joint pretrial order that if it's false, it's literally false, and that's what the court says. This idea that it's ambiguous, that their advertising was ambiguous, was never raised at trial. You can do a search for the entire 1,700 pages, the word ambiguous, ambiguity, nothing shows up. This is an after-the-fact argument. But what the court is saying there is that I find that the statement is false, and I find that it's literally false, but even if not, it was a central part of their finding, so therefore it is misleading and material. Materiality and prejudice are not the same thing, especially when we're dealing with an abuse of discretion standard. And that statement only addresses that aspect of it. The court was well aware he made that finding, and he still rejected the Latches argument. Which is internally inconsistent. It is not, simply because that finding relates simply to whether or not it's material. And that's why Jarrow is so important to look at the facts of that case and what was proven and what was not. The AST paid lip service to this defense at trial and now is hanging its hat on one out-of-context statement in order to try to show Latches. What one out-of-context statement? The finding that it was central to the advertising. Jarrow says it's not simply... Would it be inappropriate to send this back and just redo the Latches analysis? I mean, first of all, do you have arguments on the unreasonable delay? I mean, you agree it was eight years.  Are you claiming an excuse? Yes, I do, Your Honor. There are two things that were presented at trial. One of those was essentially W&I was in bankruptcy starting in 2009 and didn't have the wherewithal to pursue anything. The second is, as Mr. Giraldi recognizes in his testimony, that these formulations change over time. And what Mr. Haruka testified to was he didn't realize that there was an allegation not simply that it was enterically coded, but that it was enterically coded through applying a coating directly to the granules until 2017. I'm trying to understand, if we sent this back, what would that look like? And could the district court then reopen this and just say, look, come in here, we're going to go through both of these, we're going to analyze it? Or would you be arguing you can't present new evidence, it's all stuck with the record that we already have? I would argue we had a jury trial, or not a jury trial, but a bench trial. Right, but if we thought that the district court didn't do the full analysis, I just wonder if we shouldn't focus on that, if the district court shouldn't have focused on it more. And I'm more than happy if this court wants to send it back down to look at that issue because I think under all of the case law, we prevail on that issue. And I'm out of time, Your Honor. Thank you, Counsel. Thank you, Your Honor. Let me start where Mr. Purcell ended, which is should this be sent back for a trial on just latches. If the court chooses to do that, certainly we could do that. I think that would be a trial or could, I don't know. So the latches evidence is throughout the record, right? All of the delay is throughout the record. Prejudice has already been specifically established, as this court has noted. The courts, just to reiterate on this, the courts specifically found factually that the evidence indicates AST centered its advertising and spent substantial funds on the claim that its products were more effective because of the enteric coding. Whatever the context of that is or is not, it doesn't matter. That is a factual finding of the court that substantial funds were spent on advertising, which was focused on enteric coding. I'd like to, there's a few points I'd like to briefly address. First, whatever Mr. Heruka's testimony was, which I believe was that he found out that in 2017 there was something specific to enteric coding, it's immaterial here. It's irrelevant because there is clear, abundant evidence that the company itself knew of the enteric coding advertising by AST in 2010. There's a list of those citations in the brief. I can run through them now if we had time. So the record is quite replete on that. With regard to advertising spend, I want to focus on two specific things here. One is it is error not to address, and this is relevant to the advertising spend. It is relevant to or it is important and it is error when the unreasonable delay is not addressed because there, one, is a presumption in favor of finding latches when there is unreasonable delay. And that's based on that comment at the end of Jarrow? That's based primarily on Jarrow, yes, Your Honor. But secondly, it is established in the Ninth Circuit in regard to latches that if only a short period of time has elapsed since the accrual of a claim, the magnitude of the prejudice required before suit is barred is great. Whereas if the delay is lengthy, as it is here, prejudice is more likely to have occurred and less proof of prejudice will be required. That's from Petrella v. Metro-Golden-Mayer. That's a Ninth Circuit case? It is a Ninth Circuit case, 695F3rd 946. Here, clearly, AST put on enough evidence with regard to its advertising and that its advertising centered on enteric coding for the court to make that factual finding. There is testimony in the record regarding the amount of advertising costs that were spent, and there's testimony in the record for pleat in the record with regard to the fact that that focused on enteric coding, and that was a critical part of that advertising. Therefore, prejudice clearly exists here. The court did mention in a ruling or in part of its holding that the advertising costs were proven with such little evidence. That is not a standard that exists in the law. That is not the standard here. All right, thank you, Counsel. Thank you. Thanks to both of you for your briefing and argument. This matter is submitted, and we'll call the last case for today for argument.
judges: GRABER, OWENS, NELSON